UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| KEVIN GUAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:09-cv-217-DBH |
| | ) | |
| THOMAS BURACK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| LORRAINE GUAY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:09-cv-253-DBH |
| | ) | |
| THOMAS BURACK, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON MOTIONS TO DISMISS**
**and**
**ORDER ON LORRAINE GUAY'S MOTION FOR LEAVE TO FILE A SURREPLY**

Lorraine and Kevin Guay, both residents of Concord, New Hampshire, have brought

separate lawsuits against Thomas Burack, Commissioner of the Department of Environmental

Services for the State of New Hampshire, Kelly Ayotte, Attorney General for the State of New

Hampshire, Detective Sean Ford of the Concord Police Department, the Concord Police

Department and the City of Concord.[1]  Also pending is a motion by Lorraine Guay for leave to

file a surreply to demonstrate that she has standing to bring claims related to the property at 12

Villanova Drive. (Doc. No. 28.)  I grant this motion.  With respect to the pending motions to

dismiss, I conclude that an evidentiary record would have to be developed before the court could

---

[1]     For ease of reference I will refer to Burack and Ayotte as the "state defendants" and the police department,
Ford, and the City as the "municipal defendants."

rule on the defendants' recently asserted judicial estoppel defense.  I am therefore unable to make a recommendation that the matter should be dismissed on that basis, although as the discussion below indicates, such dismissal is a viable possibility in this case.   Because of the unusual procedural posture of this issue, I have also chosen to address the merits of the issues raised in the original motions to dismiss that were referred to me for recommended decision.  As a result of my review, if the court determines it is appropriate to reach the merits of motions to dismiss prior to disposing of the judicial estoppel defense, I would recommend that the court grant the state defendants' motion (see Doc. Nos. 15 & 32) and grant in part the municipal defendants' motion (see Doc. Nos. 16 & 33).

### Discussion

Because the cases arise from the same nucleus of operative facts, the court has ordered them consolidated.  (09-217-DBH, Doc. No. 30, 09-253-DBH, Doc. No. 31.)   Both complaints allege constitutional claims arising under the Fourth and Fifth Amendments, malicious abuse of process, conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress in conjunction with the defendants' roles in obtaining and executing search warrants and in conducting searches at three separate premises in Concord on March  25, 2009. Kevin Guay's complaint includes an additional count of malicious prosecution.  Federal jurisdiction is premised at least in part on a theory that the malicious prosecution, abuse of process, and conspiracy claims are articulations of violations of the protections of the United States Constitution.

After the state defendants and the municipal defendants had filed separate motions to dismiss the complaints brought by Lorraine and Kevin Guay, on December 8, 2009, I issued an order requiring supplemental briefing.  Therein I indicated:

It is not in the interest of either this court or the parties to issue a recommended decision on the substantive issues raised by these motions to dismiss if the plaintiffs are not the real parties in interest or otherwise lack standing to bring this suit.  That issue could well be determinative of this lawsuit at this time.  The defendants rely upon Vidal v. Doral Bank Corp., 363 F.Supp.2d 19, 22 (D.P.R. 2005) for the proposition that the trustee in bankruptcy is the real party in interest in a proceeding such as this one.  However, even accepting defendants' argument as true, the remedy is not immediate dismissal of the action because the real party has not been joined.  See, e.g., Aquila, LCC v. City of Bangor, 640 F.Supp.2d 92 (D. Me. 2009).  The plaintiffs must be given a reasonable amount of time to join the real party in interest, if indeed the trustee is the real party in interest, and/or an opportunity to prove to this court that the trustee has made an intentional choice to abandon the action[2].

Therefore, the parties must file supplemental briefing, limited to the issue of whether the trustee remains the real party in interest.  Both parties should include with their supplemental briefing any information regarding what notice, if any, has been given to the trustee regarding this proceeding and whether or not the trustee intends to intervene in this case or abandon the action.   The defendants' supplemental brief, not to exceed ten pages, is due by January 4, 2010.  The plaintiffs may each file a response, not to exceed 10 pages, by January 28, 2010.  No further supplementation is allowed.

(Order Suppl. at 3, 09-253-DBH, Doc. 40.)

The Chapter 7 trustee responded with a notice of abandonment, indicating that the lawsuits are burdensome and of inconsequential value to the estate. (Id. Doc. No. 45;D. N.H Bankr. No. 08-12786-MWV, Doc. 302.)  February 8, 2010, was the deadline for responding to that notice and there have been no objections filed in the bankruptcy case.

Both Guays have responded to the order to supplement.  Lorraine Guay, represented by counsel, insists that she did not keep this lawsuit a secret from her creditors, noting that the suit was discussed at the August 12, 2009, meeting of creditors and that her attorney offered to provide the trustee with the filing of the suit.  (L. Guay Reply at 2.) She adds:  "It is unknown why the suit was not included by the plaintiff's attorney in supplemental schedules and statements, but it is anticipated that, at worst, it was inadvertent oversight and definitely not

---

[2]   A review of the bankruptcy docket entries reveals that the last action taken in the case was on January 28, 2010.  The debtors received their discharge on October 27, 2009.

3

fraudulent." (Id.)  And with respect to the future, Lorraine Guay represents:  "Although discharged, the bankruptcy is not closed and there is not impediment to the plaintiff amending the supplemental schedules and statements to include the suit and thereby proceeding with the suit." (Id.)

Kevin Guay asserts in his reply to the defendants' supplemental response:  "Plaintiff's bankruptcy attorney's failure to supplement is merely an oversight and she is in the process of supplementing the schedules at this time and since the case is not closed yet, she will not have to reopen the case."  (K. Guay Reply at 2.)

To this date the Guays have not filed pleadings in their bankruptcy case seeking, as promised, to amend their schedules.  This step seems to be necessary vis-à-vis the bankruptcy proceedings but I could find no authority for the proposition that I cannot proceed to address the pending motions now that the Chapter 7 trustee has abandoned the bankruptcy estate's interest in the legal actions. This is not to say that the temporal history of Guay's failure to amend is irrelevant to the defendants' defense of this case.

With respect to the pending motions in this court, there is precedent for allowing defendants to debtors/former debtors' suits to raise a judicial estoppel defense to such suits that have gone unlisted on the bankruptcy schedules. See Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570 (1st Cir. 1993)[3]; Cannon-Stokes v. Potter, 453 F.3d 446,

---

[3]   The Panel opined:

> The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in Payless's present suit, it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively. See, e.g., In re H.R.P. Auto Center, Inc., 130 B.R. 247, 253-54 (Bankr.N.D.Ohio 1991) (collecting cases). Payless, having obtained judicial relief on the representation that no claims existed, cannot now resurrect them and obtain relief on the opposite basis. This may not be strictly equitable estoppel,

448 (7th Cir. 2006)(Easterbrook, Cir. J.)(" [I]f the estate (through the trustee) abandons the claim,

then the creditors no longer have an interest, and with the claim in the debtor's hands the

possibility of judicial estoppel comes to the fore. That is what has happened here: the trustee

abandoned any interest in this litigation, so the creditors are out of the picture and we must

decide whether Cannon-Stokes may pursue the claim for her personal benefit."); Jethroe v.

Omnova Solutions, Inc., 412 F.3d 598, 600 (5th Cir. 2005) ("Judicial estoppel is particularly

appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then

pursues a claim in a separate tribunal based on that undisclosed asset.");  see also  Eastman v.

Union Pacific R. Co., 493 F.3d 1151, 1157 (10th Cir. 2007); Burnes v. Pemco Aeroplex, Inc., 291

F.3d 1282, 1287-88 (11th Cir. 2002); In re Coastal Plains, Inc., 179 F.3d 197, 208 -209& n.7 (5th

Cir. 1999) (collecting cases); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414,

416 (3d Cir. 1988); Locapo v. Colsia, 609 F.Supp.2d 156, 159 n.5 (D.N.H. 2009) (collecting

cases); Howell v. Town of Leyden, 335 F. Supp. 2d 248 (D. Mass. 2004) (summary judgment).

    The Guays filed their joint Chapter 11 petition on September 28, 2008.   The execution of

the search warrants  -- the heart of the Guays' claims in these civil actions -- took place on

March 25, 2009.[4]   The Bankruptcy Court issued an order of conversion to Chapter 7 on June 25,

2009.  The Guays' civil rights complaints were filed on July 28, 2009, in the District of New

Hampshire.  On August 12, 2009, there was a meeting of creditors and at that meeting the

attorney representing the State of New Hampshire in this action advised the Chapter 7 trustee of

---

as the court observed. Indeed, defendants may have a windfall. However, it is an unacceptable
abuse of judicial proceedings.

Id. at 571.

4    See cf. Schomaker v. United States, 334 Fed.Appx. 336, 338, 2009 WL 1587780, 1 (1st Cir. June 9, 2009)
(unpublished)("The district court therefore correctly found that the claim accrued when Schomaker knew or had
reason to know that the government's retention of the property became wrongful- *i.e.,* when defendant Huftalen
received and failed to respond to Schomaker's concededly rightful request to release the property, on or about July
13, 1998.").

these lawsuits.  On August 31, 2009, the defendants filed their motion to dismiss raising the issues of standing and real party in interest, but not the defense of judicial estoppel.  On September 22, 2009, the Bankruptcy Court ordered the Guays to file the requisite Bankruptcy Rule 1019 information[5] which put the onus on the Guays to identify additional information required by Bankruptcy Rule 1007.[6]  The Guays' Chapter 7 discharge entered on October 27, 2009.  On October 29, 2009, they filed an affidavit in the bankruptcy proceeding that represented there were no amendments to the list of scheduled property:

1. We have reviewed our Bankruptcy Petition and Amendments as filed and find that there is no additional information to include on our Petition or Amendments.
2. We make the foregoing declaration under penalty of perjury.

---

[5]    The relevant portion of that rule reads:

When a chapter 11, chapter 12, or chapter 13 case has been converted or reconverted to a chapter 7 case:

(1) Filing of lists, inventories, schedules, statements

**(A)** Lists, inventories, schedules, and statements of financial affairs theretofore filed shall be deemed to be filed in the chapter 7 case, unless the court directs otherwise. If they have not been previously filed, the debtor shall comply with Rule 1007 as if an order for relief had been entered on an involuntary petition on the date of the entry of the order directing that the case continue under chapter 7.

**(B)** If a statement of intention is required, it shall be filed within 30 days after entry of the order of conversion or before the first date set for the meeting of creditors, whichever is earlier. The court may grant an extension of time for cause only on written motion filed, or oral request made during a hearing, before the time has expired. Notice of an extension shall be given to the United States trustee and to any committee, trustee, or other party as the court may direct.

Fed. R. Bankr. P. 1019.

[6]    Subsection (h) of Rule 1007 provides:

(h) Interests acquired or arising after petition

If, as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 14 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the chapter 7 liquidation case, chapter 11 reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13 individual debt adjustment case. If any of the property required to be reported under this subdivision is claimed by the debtor as exempt, the debtor shall claim the exemptions in the supplemental schedule. The duty to file a supplemental schedule in accordance with this subdivision continues notwithstanding the closing of the case, except that the schedule need not be filed in a chapter 11, chapter 12, or chapter 13 case with respect to property acquired after entry of the order confirming a chapter 11 plan or discharging the debtor in a chapter 12 or chapter 13 case.

Fed.  R. Bankr. P. 1007(h).

(Doc. No. 41-6 at 1.)  The defendants argue that this affidavit "judicially estops the debtors from attempting to rectify the situation" by amending their schedules.  (Defs' Suppl. Br. at 6.) They also point out that on November 9, 2009, the Guays responded to the State of New Hampshire Rule 1019 premised motion for contempt in the bankruptcy case (D.N.H. Bankr. No. 08-12786-MWV, Doc. No. 284) with an objection that included the representation: "In accordance with the Court's request, the Debtors have filed an affidavit stating that the information provided by their bankruptcy schedules as amended was accurate and there are no changes." (Id. at 7, quoting Obj. Mot. Contempt ¶ 2, D.N.H. Bankr. No. 08-12786-MWV, Doc. No. 288.)

The Guays point out that the suits were disclosed to the trustee at the meeting of creditors and, essentially, argue that the omission in the schedules is inadvertent. However, in Jeffrey v. Desmond the First Circuit described the "appellants' argument that they brought the state court action to the Trustee's attention" as "completely overlook[ing] both the importance of the Bankruptcy Code's disclosure requirements and the fact that appellants signed the schedules under penalties of perjury."  70 F.3d 183, 187 (1st Cir. 1995) (citing Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988) and In re Giguere, 165 B.R. 531, 536 (Bankr.D.R.I.1994)); see also PSA, Inc. v. P.R.Telephone Co., 336 F.Supp.2d 173, 178 (D.P.R. 2004) ("We note that, contrary to Plaintiffs' assertion, the First Circuit does not require that we find deliberate dishonesty in order to apply judicial estoppel.").  In addition, to the extent that the Guays fault their bankruptcy attorney, the "my attorney made me do it" excuse does not carry the day for the Guays.  See Eastman 493 F.3d at 1159("[The debtor's] assertion that he simply did not know better and his attorney 'blew it' is insufficient to withstand application of the doctrine."); Cannon-Stokes , 453 F.3d at 449 ( "[B]ad legal advice does not relieve the client of the consequences of her own acts. A lawyer is the client's agent, and the client is bound by the

consequences of advice that the client chooses to follow. Cannon-Stokes might as well say that she is free to ignore any contract that a lawyer advised her to sign with her fingers crossed behind her back. … Whether the bankruptcy fraud was [her dis-barred  attorney's] suggestion, some other lawyer's, or Cannon-Stokes's own bright idea does not matter in the end. The signature on the bankruptcy schedule is hers."); <u>accord</u> <u>Jethroe</u>, 412 F.3d at 601.

I acknowledge that Lorraine Guay views the defendants' judicial estoppel argument as "tangential" and faults them for raising it for the first time in response to the order to supplement. (L. Guay's Reply Defs.' Suppl. Br. at 1.)  Based on the discussion of the procedural history of this case and the legal precedents addressed above, I disagree with Lorraine Guay on the "tangential" issue.   As <u>Payless Wholesale Inc.</u> demonstrates by deciding the issue on the estoppel defense rather than on the district court's review of the merits of the claims, there is nothing tangential about this type of judicial estoppel claim in cases postured as are these two. And as for the question of this theory being a Johnny-come-lately interjection, the defendants' argument could not have been effectively forwarded until the resolution of the very related issues of standing and real party in interest, and it is only with the resolution of those issues by the trustee's notice of abandonment, that the estoppel defense was asserted.   The motion to dismiss based upon failure to join the real party in interest has lost its legs.  It is somewhat ironic for the Guays to feel put-out by the lack of early clarity on this question.  There is an inescapable connection between their failure to bring these lawsuits within the fold of their bankruptcy proceedings and the requirement that this court affirmatively reach-out for some determination by the Chapter 7 trustee as to the status of the estate's interest in the claims in order to adjudicate the motions to dismiss, which after all sought dismissal of the actions because the apparent real party in interest had not been joined.  I agree with defendants that they are entitled to an early

8

resolution of their judicial estoppel defense, but I am not convinced that I can make a definitive recommendation on that issue in the context of the two pending motions to dismiss that have been referred to me for recommended decision.

With respect to the question of whether or not I should address the merits of the defendants' Federal Rule of Civil Procedure 12(b)(6) arguments, I am cognizant that the First Circuit's <u>Payless Wholesale Distribs., Inc.</u> 'happily' did not address the merits of "a comprehensive opinion [wherein] the court granted defendants' motion to dismiss nineteen of the causes of action, and then granted a motion for summary judgment for defendants as to the twentieth," because of its conclusion that the district court "should have recognized the defense of judicial estoppel and dismissed the complaint at the outset." 989 F.2d at 571.

<u>Payless Wholesale Distribs., Inc.</u>, thus, counsels that the court consider the estoppel argument rather than leapfrogging to the merits. Some Circuit Courts of Appeals have indicated that it is important to infer the debtors' intent vis-à-vis nondisclosure from the record. <u>See</u>, <u>e.g.</u>, <u>Eastman</u>, 493 F.3d at 1157; <u>Burnes</u>, 291 F.3d at 1287-88. However, the First Circuit directed in the unpublished <u>Brooks v. Beatty</u> that if a trustee abandons the interest, as is the case here, "the district court should resolve the judicial estoppel issue on the merits following an evidentiary hearing." No. 93-1891,1994 WL 224160, 3 (1st Cir. May 27, 1994) (citing <u>Rivera-Gomez v. de Castro</u>, 900 F.2d 1, 2 (1st Cir. 1990) for the need to conserve "scarce judicial resources by targeting early resolution of threshold issues").[7]

---

[7]     Perhaps if this case was further along and I was addressing a summary judgment record it would be possible to decide the estoppel issue in that posture. However, we are still at the motion to dismiss stage and the defendants' joint brief in response to my order to supplement makes it crystal clear that they want this question resolved at this juncture.

Given the fact that I cannot recommend resolving the "merits" of the judicial estoppel defense without some sort of evidentiary finding,[8] and the procedural anomaly that these motions were referred to me for a recommended decision when the defense of judicial estoppel had not yet been asserted, I have determined not to heed the counsel of <u>Payless</u> and 'unhappily' I turn to the merits of the parties' motions to dismiss.

**Complaint Allegations**

On March 25, 2009, Sean Ford, a detective with the Concord Police Department, obtained a search warrant for Kevin and Lorraine Guay's property at 180 Clinton Street in Concord, New Hampshire.  (Compls. ¶ 9.)  Simultaneously another warrant was issued for their property at 30 Villinova Drive.  (<u>Id.</u> ¶ 10.)  Both warrants allowed for the extensive excavation of the properties based upon a belief that the search would reveal violations of State Pollution Control laws, including the illegal disposal of asbestos, lead paint, oil discharge, septic disposal and various hazardous wastes.  (<u>Id.</u> ¶ 11.)  After the issuance of the warrants agents of the Department of Environmental Services entered the properties with heavy equipment such as excavators and backhoes, thereby causing damage to the property.  (<u>Id.</u> ¶ 12.)   During this entire process the defendants caused both plaintiffs to be subject to ridicule and embarrassment from numerous stories released to newspapers and television news reporters.  (<u>Id.</u> ¶19;  L. Guay Compl. ¶ 16.)

**Additional Complaint Allegations (Kevin)**

The property at 180 Clinton Street had its septic system damaged and holes were dug everywhere on the property.  The buildings were ransacked and searched as well.  (K. Guay

---

[8]         The Guays maintain that their conduct was inadvertent and they are in the process of amending the bankruptcy schedules to correct that problem.  They also assert that these defendants were present at meetings of creditors in the bankruptcy case and well knew of the existence of this lawsuit.  Whether those factual assertions are accurate remains to be seen.

Compl. ¶ 13.)  The property at 30 Villanova Drive suffered the same fate.  Additionally the

underground electrical service was severed and a large mound of excavated dirt left on the

property.  None of the damage was repaired.  (Id. ¶ 14.)  Detective Sean Ford refused to allow

Kevin Guay access to the properties at either 180 Clinton Street or 30 Villanova Street during the

entire process.  Guay and the residents of 12 Villanova Drive, a premise not named in any search

warrant, were also denied access to that property.  (Id. ¶ 15.)  Two days after the defendants left

the property at 30 Villanova Drive, a steady rainfall developed and the exposed dirt pile left by

the defendants began to erode sediment into the Penacook Lake.  (Id. ¶ 16.)  This sediment

pollution prompted the Attorney General, Kelly Ayotte, to seek an injunction requiring Kevin

Guay to bear the cost of stabilizing the property to prevent further erosion and pollution into the

lake.  Ayotte knew or should have known that the erosion/pollution was caused by the

individuals who had excavated the property, not Guay.  (Id. ¶ 17.)   Despite the extensive

excavation and sampling of the Guay property, no evidence of any type of pollution or hazardous

waste has been revealed and Kevin Guay has not been convicted of any offense or violation of

state pollution control laws.  (Id. ¶ 18.)

**Additional Complaint Allegations (Lorraine)**

Lorraine Guay's home at 12 Villanova Drive was also searched during the execution of

the warrants.  Guay does not know if anything was taken from her home.  (L. Guay Compl. ¶

13.)  The police had no warrant in their possession to allow a search of her home.  (Id. ¶ 14).

During the entire time of the search, Detective Sean Ford refused to allow anyone, including

Lorraine Guay, access to her property.  (Id. ¶ 15.)

<strong>Motion to Dismiss Pleading Standards</strong>

Federal Rule of Civil Procedure 12(b)(6), one of the procedural vehicles for the defendants'

motion, provides that a complaint can be dismissed for "failure to state a claim upon which relief can

11

be granted." In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008).  To properly allege a claim in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

To the extent the Guays have sued the Attorney General of New Hampshire and the Commissioner of the Department of Environmental Services for the State of New Hampshire in their official capacities, the suit is one brought against the State of New Hampshire.  The state defendants have also moved to dismiss under Rule 12(b)(1), claiming that this court lacks subject matter jurisdiction.  "As a general matter, 'states are immune under the Eleventh Amendment from private suit in the federal courts, absent their consent.'" Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002) (quoting Greenless v. Almond, 277 F.3d 601, 606 (1st Cir.2002)).  "This immunity extends to any entity that is an 'arm of the state.'" Id. (quoting In re San Juan Dupont Plaza Hotel Fire Litig., 888 F.2d 940, 942 (lst Cir.1989) and citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)).  Furthermore, neither a state nor its officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983.  Will v. Mich. Dep't. of State Police, 491 U.S. 58, 71 (1989).

As a preliminary matter, both plaintiffs agree that Ayotte and Burack are sued only in their individual capacities and, thus, to the extent the complaint could be construed as an "official capacity" complaint against them, it should be dismissed.  (L. Guay, Mem. Obj. Mots. Dismiss at 2, Doc. No. 21;  K. Guay, Obj. Mot. Dismiss at 1, ¶ 1, Doc. No. 35.)  Thus, as to both

plaintiffs I will analyze the complaint allegations under the Rule 12(b)(6) failure to state a claim

rubric as it applies to the individual named defendants.  Furthermore, because the cases have

now been consolidated, I will consider jointly the allegations made against Burack and Ayotte by

both plaintiffs, thereby giving the plaintiffs every benefit of the doubt in terms of the factual

allegations against these two individual defendants.

In both complaints at Paragraphs 3 and 4, Ayotte and Burack are identified by name and

occupation.  Also both complaints contain a conclusory  Paragraph 8 which states only that all of

the defendants  "at all times material to this complaint"  acted "in collusion toward the plaintiff."

Lorraine Guay never mentions either Ayotte or Burack in the body of the complaint and provides

absolutely no factual allegations as to what they may have done in violation of either her

constitutional rights or New Hampshire tort law, although Count Two of her complaint and

Count Three of Kevin Guay's complaint allege a "conspiracy" by all the defendants in violation

of their constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United

States Constitution.  Kevin Guay, in Paragraph 17 of his complaint, again mentions Kelly

Ayotte, asserting that the Attorney General sought an injunction against him, presumably in state

court, seeking to hold Guay responsible for sediment in the lake resulting from the excavation

done during the execution of the search warrant.   Burack is never mentioned by name by either

plaintiff after being identified as a party, although both complaints, at Paragraph 12, reference

unnamed "agents" of the Department of Environmental Services for the State of New Hampshire

entering onto the properties named in the warrant.

Applying the United States Supreme Court's Ashcroft v. Iqbal, 129 S. Ct. 1937 to these

allegations, I conclude that both these complaints against Ayotte and Burack should be dismissed

for failure to state a claim.  In Iqbal the court summarized: "Under Federal Rule of Civil

Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" 129 S. Ct. at 1949. It reiterated, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 , 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S., at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

Under Iqbal to survive a Rule 12(b)(6) motion to dismiss,

> a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Twombly, 440 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557 (brackets omitted).

129 S.Ct. at 1949. The Iqbal majority expanded:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we  "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. … Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. … But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

14

Id. at 1949 -50 (internal citation omitted).

It is difficult to discern which allegations of the complaint pertain specifically to Ayotte and Burack in their personal capacities.  The factual content of both complaints is set forth under the section titled "Facts" and the separate causes of action recite nothing but legal conclusions, incorporating the previously set forth "facts."  Neither defendant is alleged to have been at the scene of the search, initiated the request for the search warrant, or had any contact at all with either plaintiff.  To the extent they are alleged to have participated in a conspiracy, there is absolutely no factual underpinning for the allegation that any such conspiracy existed.  What is more, there are no facts alleged in either complaint that through Ayotte's and Burack's "own individual actions" they have "violated the Constitution."  Iqbal, 129 U.S. at 1948; id. (noting that vicarious liability is inapplicable to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) and § 1983 suits).  The only concrete allegation is Kevin's assertion that the Attorney General went to court and sought an injunction involving clean up costs to avoid further pollution of the lake *after* the execution of the search warrants.[9] The complaint is devoid of any allegation pertaining to the outcome of that suit or any damages suffered by Kevin Guay because of the Attorney General's position.  Lorraine Guay does not even mention that fact as a "the defendant unlawfully harmed me" fact.  Given the Iqbal majority's conclusion that that complaint did not sufficiently allege a constitutional claim against defendants Ashcroft and Mueller, see id at 1955, 1060-61 (Souter, J., joined by Stevens, J.,

---

[9]    The state defendants have filed documentation from the state court that can be judicially noticed by this court clearly demonstrating that the state sought preliminary injunctive relief in May 2008 concerning the sedimentation problems cause by soil destabilization.  These allegations arose ten months or more prior to the search which the Guays allege occurred on March 25, 2009.  (See Doc. No. 15, Ex. B-H.)  It appears the civil litigation is ongoing in the state courts and any post-search request for injunctive relief was not newly minted but arose in the context of ongoing litigation.

Ginsburg, J., and Breyer, J. dissenting), it cannot be doubted that this complaint must be dismissed for failing to state a claim against Attorney General Ayotte and Commissioner Burack.

Nor do the Guays' state tort claims for infliction of emotional distress, malicious abuse of process[10] and, in Kevin's case, malicious prosecution against Ayotte and Burack, fare any better in this court.   A district court's exercise of supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367.  Subsection (c) of that statute provides that this court may decline to exercise that supplemental jurisdiction when all the federal claims have been dismissed.  This court ordinarily would not exercise its discretion to retain jurisdiction of the state claims unless the federal court has invested considerable time and effort on the case, such as resolving dispositive motions on the eve of trial.  See, e.g., Brown v. Town of South Thomaston , CV-08-308-P-H, 2009 WL 3208353 (D. Me.  Sept. 29, 2009).  Even if the municipal defendants remain in the case and supplemental state claims against them survive, Ayotte would only be here as a "pendant party" in conjunction with the state court lawsuit regarding injunctive relief.   As indicated in the context of the constitutional claims, Burack is never mentioned by name in the body of the complaint and there are absolutely no allegations against him that would rise to the level of any state tort.  The state claims as to Ayotte raise different issues and are based on different facts than the claims against the municipal defendants.  The claims against Ayotte, according to the complaint, arose after the search warrant was executed.  As I said earlier, neither Ayotte nor Burack is alleged to have been involved in the issuance or execution of the search warrant and the alleged attendant violations of law.   "Pendent party jurisdiction," although a "more radical form" of supplemental jurisdiction, has been authorized by Congress since the passage of the Judicial Improvements Act of 1990, 28 U.S.C. § 1367.  See Erwin Chemerinsky,

---

[10]       To the extent this count attempts to allege a constitutional violation, both plaintiffs squarely frame the allegation as against "the Concord Police Department under the direction of Detective Sean Ford."

Federal Jurisdiction § 5.4 (5th ed. 2007).  However, the Court should not retain the state law claims against such parties based on supplemental jurisdiction if they are not part of the same case or controversy or if they raise novel state law questions that substantially predominate over the federal questions.  28 U.S.C. § 1367(a), (c).   A state law tort claim for malicious prosecution against the Attorney General for the State of New Hampshire arising out of litigation activities in a state case that commenced ten months prior to the incident giving rise to this lawsuit and which continued after the execution of the warrant has precious little to do with controversy regarding the manner of the execution of the search warrant.  Accordingly, I recommend that the state defendants' motions be granted.

The municipal defendants also argue that the Guays' claims should be dismissed because they fail to state a claim and certain of the municipal defendants are entitled to various forms of immunity under both state tort law and federal law that compel the dismissal of the actions.   I address each of the claims in the context of these arguments below.   Uncharacteristically, I begin with a discussion of the state law claims and then turn to the federal constitutional claims.

**Kevin Guay's claim of malicious prosecution (Count I of the K. Guay Complaint)**

I discuss this claim separately from the malicious abuse of process claim which was brought by both Lorraine and Kevin and is discussed more fully below.   Under New Hampshire law in order for Guay to establish a civil malicious prosecution claim, he must prove (1) that he was subjected to a civil prosecution instituted by the defendant; (2) without probable cause; (3) with malice; and (4) that the proceedings terminated in the plaintiff's favor.  Paul v. Sherburne, 153 N.H. 747, 903 A.2d 1011 (2006).  Guay fails to state a claim against any of the municipal defendants as to both item 1 and item 4.  The only court action Guay references in his complaint relates to the civil injunctive action instituted by the Attorney General discussed in the preceding

section.  He alleges no facts that connect the municipal defendants to that action.  While he does allege facts that arguably connect the municipal defendants to the issuance and execution of the search warrants, those search warrants, and the process attendant thereto, are not related to a civil malicious prosecution claim but are addressed in the abuse of process count.  The Attorney General, according to the complaint, brought a malicious civil proceeding against Kevin Guay that had to do with dirt and sediment leaching into the lake after the execution of the search warrants.  According to Guay the search warrants themselves had to do with asbestos, lead, and other hazardous substances allegedly buried on the property.  Nor does Guay allege anywhere in his complaint that the Attorney General's civil action or any other court proceeding was terminated in his favor.   Guay has simply failed to allege any facts that would lead to a plausible claim of malicious prosecution as against the municipal defendants.

**Kevin (Counts IV & V) and Lorraine (Counts III and IV) Guay's Emotional Distress Claims**

Both plaintiffs have sued the municipal defendants for both negligent and intentional infliction of emotional distress.  Under New Hampshire law in order to sustain a claim for negligent infliction of emotional distress a plaintiff must prove, via expert testimony, that he or she suffered physical symptoms from the alleged infliction of emotional distress.  In re Bayview Crematory, LLC, 155 N.H. 781, 786, 930 A.2d 1190, 1195 (2007).   Neither Lorraine nor Kevin has alleged any physical symptoms as a result of the negligent infliction of emotional harm and thus they fail to state a claim for that tort.

New Hampshire recognizes the tort of intentional infliction of emotional distress in accord with Section 46 of the Restatement (Second) of Torts which reads as follows:

§ 46.  Outrageous Conduct Causing Severe Emotional Distress

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46 (1965); see Morancy v. Morancy, 134 N.H. 493, 496, 593 A.2d 1158, 1159 (1991). Thus, to allege the intentional infliction of emotional distress, plaintiffs are not required to allege bodily harm, unless such has actually occurred, but they must allege facts that constitute more than "'the indignities and insensitivity that too often taint our daily lives.'" Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 511 (2002) (quoting Godfrey v. Perkin-Elmer Corp., 794 F.Supp. 1179, 1189 (D.N.H. 1992)).   According to the Court of Appeals for the First Circuit, "[t]he standard for making a claim of intentional infliction of emotional distress is very high."  Id.

Kevin Guay's allegations are that the municipal defendants executed a search pursuant to a warrant at two premises and that in the course of executing those warrants substantial physical damage occurred at the two properties in question.  Both Lorraine and Kevin allege that the municipal defendants have released stories to newspapers and television news reporters that subject them to ridicule and embarrassment.   Even though no evidence of pollution has ever been found on the properties, the municipals defendants have not offered a retraction.  Lorraine additionally alleges that her home was illegally searched, without a warrant, but she notes that she does not know if any of her property was taken.

These allegations simply do not rise to the high standard set forth in Restatement (Second) and endorsed by the First Circuit in Moss. As Kevin concedes in his complaint, both of the warrants allowed for the extensive excavation of the property (K. Guay Compl. ¶ 11) and the attendant damage is certainly a foreseeable consequence of that excavation.   While Lorraine's

allegation that her home was searched without a warrant appears to be actionable conduct, she alleges no facts that would support a claim of intentional infliction of emotional distress. She does not allege that private property was damaged or taken nor does she allege that she was personally exposed to atrocious or outrageous conduct. The mere allegation that the police erroneously searched her home without a warrant, while a serious and sobering circumstance, does not sustain a claim for outrageous conduct giving rise to severe emotional distress.

**Kevin (Count II) and Lorraine (Count I) Guay's Malicious Abuse of Process Claims**

The plaintiffs' malicious abuse of process claims are virtually identical except for the gender of the pronouns and the numbering of the paragraphs and are set forth in the following manner:

> Plaintiff repeats and realleges and incorporates by reference the allegations in Paragraphs 9 thru [20] above with the same force and effect as it [sic] herein set forth. The Concord Police Department under the direction of Detective Sean Ford harassed the Plaintiff and denied [her] the liberty to occupy [her] property without due process of law and [her] right to equal protection of the laws, and the due course of justice was impeded in violation of the 4th, 5th, and 14th amendments of the Constitution of the United States and 42 U.S.C. sec. 1983 and 1985.

Although the caption of the count references a state law tort, the substance of the paragraph appears to allege that Detective Ford and the Concord Police Department violated the plaintiffs' constitutional rights. I will address the claim as arising both under New Hampshire state tort law and as alleging a constitutional violation.

### a.   The State law tort of abuse of process

Under New Hampshire law a party claiming abuse of process must prove the following elements:  "(1) a person used (2) legal process, whether criminal or civil, (3) against the party, (4) primarily to accomplish a purpose for which it is not designed and (5) caused harm to the party (6) by the abuse of process."  <u>Bourne v. Town of Madison</u>, Civil No. 05-cv-365-JD, 2006

20

WL 1881237 (D.N.H. July 6, 2006)(unpublished)(quoting Long v. Long, 136 N.H. 25, 29

(1992)).   It is readily apparent that Lorraine Guay has not alleged a claim for malicious abuse of

process.  The gravamen of her complaint is that the police searched her home without a warrant.

She is not complaining about the abuse of any court-issued process that was used against her and

her claim fails as a state law tort claim.

Kevin does allege that the municipal defendants obtained court process, a search warrant,

and it was used against him to embarrass and ridicule him rather than for the purpose for which it

was intended.  A search warrant is intended to unearth (no pun intended) evidence of criminal

wrongdoing or civil violations of law.  In this case Kevin alleges that not a shred of evidence was

ever uncovered.  It is an improper use of the process to harass or ridicule the person against

whom the process was issued.  Yet such harassment is exactly what Kevin alleges Detective Ford

did.  Viewing Kevin's complaint in the light most favorable to him, he does state a claim for

malicious abuse of process against Detective Ford, and through the doctrine of respondeat

superior, against his employers as well.   (K. Guay Compl. ¶ 26.)

Accepting that Kevin does state a claim for malicious abuse of process, I must next

consider whether, and to what extent, the various municipal defendants are entitled to immunity

under New Hampshire law.   The standard for official immunity for police officers under New

Hampshire law is set forth in Everitt v. General Elec. Co,, 156 N.H. 202, 932 A.2d 831 (2007), a

relatively recent case.  Municipal police officers are immune from personal liability for

decisions, acts or omissions that are:  "(1) made within the scope of their official duties while in

the course of their employment;  (2)  discretionary, rather than ministerial; and (3) not made in a

wanton or reckless manner." 156 N.H. at 219, 932 A.2d at  845.  Furthermore, the officer's

immunity extends to Concord/Concord Police Department, who would only be liable on a

respondeat superior theory as the officer's employer, pursuant to the doctrine of vicarious immunity because not to do so in a case such as this one would effectively undermine the doctrine of official immunity.  156 N.H. at 221-22, 932 A.2d at 847-48.  If the police officer undertook this search for the purposes alleged in the complaint, knowing there would be no evidence to support the search, it seems to me that it plausibly could be proven that it was a discretionary act to decide whether to obtain the warrant and he acted in a wanton or reckless manner.  On the pleadings currently before the court it would be premature to dismiss the case based on official immunity as that concept has relatively recently been announced in the context of a police officer *negligence* case in New Hampshire.  The defendants have not provided any other New Hampshire authority on this issue of official immunity in this type of situation.  I would not grant the motion to dismiss this count.

**Constitutional violations arising from searches of three separate premises**

Both Kevin and Lorrain have chosen to include their constitutional claims under the count alleging malicious abuse of process.  To the extent those constitutional claims are couched in terms of due process/malicious abuse of process violations, the existence of a state tort claim for malicious abuse of process bars a claim pursuant to 42 U.S.C. § 1983 for any sort of constitutional claim.  See Mills v. Merrimack Police Dept., Civil No. 03-136-B,  2004 WL 1013380, n. 3(D.N.H. May 5,  2004) (unpublished); Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996)(" a garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail.").  Malicious abuse of process is a close cousin of malicious prosecution and there is no reason the same principle would not operate in this case.  To the extent both Lorraine and Kevin assert Fifth Amendment due process constitutional claims, their

claims fail.  In any event, no process ever issued as to the property that Lorraine claims was searched in violation of her constitutional rights.

However, both plaintiffs have also alleged that Sean Ford violated their rights under the Fourth Amendment[11] to the United States Constitution.  The Fourth Amendment claim set forth by Lorraine Guay is that Ford caused her home to be searched without a warrant and without probable cause.  The municipal defendants raise as their first line of defense the argument that Lorraine Guay does not have standing to pursue this claim because she did not "own" the property that was searched.  This argument has generated a considerable number of exhibits on the docket, including Lorraine Guay's motion to file a surreply with an accompanying exhibit.  I now grant the motion to file a surreply concurrently with this recommended decision.  However, I do note that even without the additional exhibit there is, at a minimum, a dispute of fact as to whether or not Lorraine Guay had a possessory and/or ownership interest in the property in question such as would entitle her to Fourth Amendment protection in the event of an unlawful search of the property.

Both of these complaints were drafted by pro se litigants[12] and their complaints are to be subjected to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).   In appropriate circumstances, pro se (and formally pro se) litigants also may be entitled to an opportunity to amend before their claims are dismissed with prejudice. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004).    This opportunity to amend is especially

---

[11]      Both Lorraine and Kevin also claim that Ford violated their right to "equal protection of the laws," under the Fourteenth Amendment to the United States Constitution, but neither of them have briefed that claim and I can find no facts within the body of their complaint which suggest that the Guays have been victims of "equal protection" violations by any state actors.  I consider an equal protection argument to have been waived.

[12]      It is true that Lorraine is now represented by counsel and could have sought to amend her complaint to more clearly allege this claim of a Fourth Amendment violation, especially since it obviously does not fit tidily under a count captioned "malicious abuse of process."  However it seems unfair to me to allow Kevin the benefit of a liberal reading of his complaint and then penalize Lorraine for not amending her complaint after she obtained counsel.  After all, based on the allegations, her Fourth Amendment claim appears stronger than Kevin's, as she is complaining about the search of a residence in the absence of a warrant.

important in a situation such as this where the factual predicates of a claim are stated, but the complaint is inartfully drafted due to mislabeling of the caption of a particular count of the complaint.  It is abundantly clear that both plaintiffs are complaining about what they deem to have been unreasonable searches of their properties and the right to be free from an unreasonable search arises under the Fourth Amendment to the United States Constitution.  The Fourth Amendment claim, although stated within the body of the malicious abuse of process count, was not acknowledged by the defendants or addressed by them in their memorandum.  The contours of a Fourth Amendment claim asserted by Lorraine might be significantly different from the claim asserted by Kevin.  In any event, should Detective Ford wish to assert his claim of qualified immunity, that claim might also have a different complexion depending upon whether it is asserted in the context of a search conducted pursuant to a warrant or the warrantless search of a private home.

Whatever the contours of the Fourth Amendment claims, it is abundantly clear that the factual predicate alleged in the complaints does not include any allegations that would support a constitutional claim against Concord/Concord Police Department.  Monell v. Department of Social Services, 436 U.S. 658, 691-694 (1978) established that a municipality may not be found liable under the doctrine of respondeat superior, but that liability could only arise if a municipal policy or custom directly led to the injury.  There are no facts pled in this complaint which would support a custom or policy claim and Concord/Concord Police Department is entitled to dismissal of the federal claims brought against it.

**Kevin (Count III) and Lorraine (Count II) Guay's Claim of Conspiracy**

These claims against the municipal defendants fail for the same reason the conspiracy count fails against the state defendants.  As I indicated when discussing the claims against Ayotte and Burack, there are simply no factual allegations that support an allegation these defendants conspired in some fashion to deprive the plaintiffs of their constitutional rights.  Under the Iqbal

24

pleading standard the municipal defendants are entitled to dismissal of the counts claiming that

they conspired with each other or others to violate the plaintiffs' constitutional rights.

## Conclusion

Based on the foregoing, I now recommend as follows:

1.) The court determine the evidentiary record upon which it intends to decide

defendants' defense of judicial estoppel as soon as possible and determine

whether or not it intends to allow the plaintiffs to proceed with any aspect of

this action;

2.) In the event the court reaches the merits of the pending motion to dismiss, I

recommend that the court grant the state defendants' motions and dismiss

them from this action;

3.) I further recommend that the court grant in part the municipal defendants'

motion to dismiss, and dismiss all claims against them with the following

exceptions:

a.) Kevin Guay's state tort claim for malicious abuse of process against

Detective Ford and his employer, Concord/Concord Police Department;

b.) Lorraine's and Kevin's Fourth Amendment constitutional claim against

Detective Sean Ford in his personal capacity.

### NOTICE

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, and request for oral argument before the
district judge, if any is sought, within fourteen (14) days of being served with a
copy thereof.  A responsive memorandum and any request for oral argument
before the district judge shall be filed within fourteen (14) days after the filing of
the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

February 23, 2010